UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DANDRE ALEXANDER,

                Plaintiff,                Case No. 2:16-cv-98

v.

                                    Honorable R. Allan Edgar

UNKNOWN KIND, et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This court previously granted Plaintiff leave to proceed *in forma pauperis* and required Plaintiff to pay an initial partial filing fee within 28 days. Twenty-eight days have elapsed, and Plaintiff contends that he is now financially unable to pay the fee. The court will dismiss Plaintiff's action without prejudice for want of prosecution.

### Discussion

I.   Requirement to pay a filing fee

On April 27, 2016, Plaintiff was granted leave to proceed *in forma pauperis*, and was ordered to pay an initial partial filing fee of $0.34. Plaintiff has subsequently filed a "motion to waive initial partial filing fee due to indigency," claiming that he is unable to pay the initial partial filing fee. Specifically, Plaintiff claims that his account balance is currently $0.00 and he will not be receiving any funds in the immediate future due to family circumstances.

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321,

which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*.   The PLRA was "aimed at the skyrocketing number of claims filed by prisoners--many of which are meritless--and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).   One of the significant changes brought about by the PLRA pertains to payment of the civil action filing fee.   Prior to the enactment of the PLRA, a prisoner proceeding *in forma pauperis* could bring an action without prepayment of the civil action filing fee.   Under the current law, a prisoner proceeding *in forma pauperis* must pay the $350.00 civil action filing fee through an initial partial filing fee and subsequent monthly payments as outlined in 28 U.S.C. § 1915(b).   The requirement that prisoners pay the fee put into place an economic incentive, to prompt a prisoner to "stop and think" before filing a complaint.   *Hampton*, 106 F.3d at 1286.   The constitutionality of the PLRA's fee requirements has been upheld by the Sixth Circuit.   *Id.* at 1281.

Under 28 U.S.C. § 1915(b)(1), the initial partial filing fee is based upon the prisoner's financial status during the six-month period immediately preceding the filing of the complaint.   *See McGore v. Wrigglesworth*, 114 F.3d 601, 605-606 (6th Cir. 1997) (holding that, although § 1915(b)(1)(A) does not contain a six-month provision as does § 1915(b)(1)(B), § 1915(b)(1)(A) is subject to the same six-month provision as contained in § 1915(b)(1)(B)).   The initial partial filing fee is equal to 20% of the greater of (1) the average monthly deposits in the account or (b) the average monthly balance in the account.   The remainder of the filing fee, which is collected by the agency having custody of the prisoner, is to be paid via monthly payments equal to 20% of the preceding month's income credited to the prisoner's account each month the amount in the account exceeds $10.00.   28 U.S.C. § 1915(b)(2).

-2-

Not all prisoners are required to pay an initial partial filing fee.  Under § 1915(b)(1), the court must collect the initial partial filing fee only when "funds exist."  *See Hampton*, 106 F.3d at 1284 (when "funds exist" means that a prisoner without funds will not be denied access to a federal court based on his poverty).  Thus, a prisoner who has no assets and no means to pay the initial partial filing fee may still bring an action under § 1915(b)(4), which provides:

> In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C. § 1915(b)(4).  By enacting Section 1915(b)(4), Congress struck a balance "between ensuring poor persons' access to the courts and discouraging prisoners from filing frivolous claims." *Walp v. Scott*, 115 F.3d 308, 310 (5th Cir. 1997).

## II.  Calculation of Plaintiff's filing fee

As noted above, plaintiff was ordered to pay an initial partial filing fee of $0.34 on April 27, 2016.  The assessment of $0.34 as an initial partial filing fee was based upon plaintiff's financial status during the six-months immediately preceding the filing of his complaint.  *See McGore*, 114 F.3d at 607 ("because the trust account is so fluid, the date that complaint or notice of appeal is deemed filed with the clerk of the district court will be the controlling date for the computation of the initial partial filing fee under § 1915(b)(1)).

Notably, at the time Plaintiff filed his complaint, his financial status indicated that he was able to pay the $0.34 initial partial filing fee.  According to Plaintiff's trust account statement, Plaintiff had a spendable balance of $10.00 in his account, and had an average monthly deposit of $1.67.  (ECF Nos. 2 and 3.)  Thus, at the time Plaintiff filed his complaint, "funds existed" for

payment of the fee, *see* § 1915(b)(1), and Plaintiff's financial situation was not one of "no assets and no means" to justify waiver of the initial partial filing fee under § 1915(b)(4).

Though he was financially able to pay the initial partial filing fee at the time of his complaint, Plaintiff failed to do so within the allotted 28 days.  Subsequently, Plaintiff filed this motion for waiver of the initial fee, claiming that he was not able to pay the filing fee. Plaintiff claims that he currently has no money in his account.  However, this fact is irrelevant to the issue of whether Plaintiff had enough money in his prison account to pay the initial partial filing fee at the time his complaint was filed.

By his request, Plaintiff seeks to be released from the requirement of paying the initial partial filing fee of $0.34.  The court could re-calculate the fee owed based on Plaintiff's current financial circumstances, or waive the fee altogether.  Because neither is appropriate under the circumstances, and because Plaintiff has failed to pay the required fee, the court will dismiss Plaintiff's action for want of prosecution.

### III.   Re-computation of Plaintiff's filing fee?

At the time that Plaintiff filed his complaint, the court computed the initial partial filing fee that was due.[1]  The court cannot now re-compute the initial partial filing fee that is owed.  The provisions of the PLRA support the conclusion that the initial partial filing fee is not open for re-computation as a prisoner's financial condition changes after the filing of the action.  The prisoner must submit an affidavit which reflects the assets he "possesses," 28 U.S.C. § 1915(a)(1), and a trust account statement for the "six-month period immediately preceding the filing of the complaint or notice of appeal." 28 U.S.C. § 1915(a)(2).  The calculation of the initial partial filing fee, itself, is based on the previous six months. 28 U.S.C. § 1915(b)(1).  There are no statutory provisions which require the prisoner, after he has filed a complaint, to continue to submit account statements or affidavits as his financial situation changes for a re-computation of the initial partial filing fee.  There are no statutory provisions which require the court to continually re-evaluate the prisoner's financial status through a day-by-day or even month-by-month monitoring of a prisoner's account.  Such a continual monitoring of a plaintiff's financial condition would be unduly burdensome, and it is not required by the letter or the purpose of the PLRA.

Moreover, the Sixth Circuit has stated that "[s]ection 1915(b)(1) compels the payment of the respective fees at the moment the complaint or notice of appeal is filed." *McGore*, 114 F.3d at 607 (citing *In re Tyler*, 110 F.3d 528, 529-30 (10th Cir. 1997)).  Thus, Plaintiff became liable for $0.34 for an initial partial filing fee at the moment that he filed his complaint.  Even though the fee is due at the moment the complaint is filed, the court allows 28 days for the prisoner to submit the

---

[1]The Sixth Circuit has suggested that a court may either compute the fee itself or order the prison officials to make the computation.  *McGore*, 114 F.3d at 607.

fee. The 30-day window allows for the court's order assessing the fee to be mailed to the prisoner, and for the prisoner to apply for a disbursement to pay the initial partial filing fee and then mail the fee to the court. The 30-day window is not an opportunity for a prisoner to re-open the issue of his financial status to seek a re-assessment of the initial partial filing fee. Therefore, the court will not re-compute the initial partial filing fee that is owed based on any change in Plaintiff's financial status.

## IV. Waiving the fee under § 1915(b)(4)?

Plaintiff appears to be claiming that the initial partial filing fee should be waived pursuant to Section 1915(b)(4). Section 1915(b)(4) states that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." Although Plaintiff had the assets and the means to pay his fee at the time his complaint was filed, Plaintiff contends that he no longer is financially able to pay the initial filing fee. Because § 1915(b)(4) applies only at the time the complaint is filed, § 1915(b)(4) does not apply to waive payment of the initial partial filing fee after the filing of the complaint.

By its own terms, § 1915(b)(4) applies to the "bringing of a civil action." Thus, it applies when an action is brought, not to an action that is proceeding. Plaintiff has already been granted leave to proceed *in forma pauperis* and his case is proceeding. *See McGore*, 114 F.3d at 608 (stating that once the assessment is made, the case may continue to be "processed in due course" as there is no need to delay adjudication of a complaint until the initial partial filing fee has been paid). Also, as discussed above, none of the provisions of the PLRA supports the conclusion that the court should be obligated to continually assess a prisoner's financial status.

-6-

The Sixth Circuit has applied § 1915(b)(4) only at the time the complaint is filed.

According to the Sixth Circuit:

> When the mathematical computation provided under § 1915(b)(1) indicates that the prisoner is obligated to pay an initial partial filing fee despite evidence demonstrating that the prisoner is without financial resources *at the time the complaint or appeal is filed*, pursuant to § 1915(b)(4) the district court must allow the case to proceed to the screening process.  Although the statute permits a prisoner to avoid even partial payment of the filing fee *at the commencement of the action,* under these circumstances the district court is still required to impose an initial partial filing fee pursuant to § 1915(b)(1) and, when funds become available, the prisoner must pay the initial partial filing fee.

*McGore*, 114 F.3d at 606 (emphasis added).   Thus, the Sixth Circuit directs that the court consider the prisoner's assets *at the time the complaint is filed* to determine whether the prisoner may bring his action without paying the initial partial filing fee.

Moreover, allowing a prisoner, who had the assets and the means to pay an initial partial filing fee at the time of the complaint, to subsequently contend that he can no longer pay would embroil the court in satellite litigation over the prisoner's financial condition.  The prisoner would need to show that he is no longer able to pay, by submitting proof such as additional affidavits and trust account statements.  Given the fluctuating nature of the prisoner's trust account, a prisoner could ceaselessly argue that the financial information was stale.  *See McGore*, 114 F.3d at 607 (suggesting that the district court allow the prison officials to calculate the initial partial fee based on the six months preceding the filing of the complaint, because "[i]nmates could create needless litigation over a few pennies by constantly arguing that the assessments were based on stale information if a district court chooses to calculate the assessment.").  Moreover, the court would be forced to determine the propriety of the prisoner's choice to spend his money on something other than the initial partial filing

-7-

fee.  For example, should the court excuse payment of the initial partial filing fee when the money has been spent on a filing fee for another action, or to pay for music by mail, or to pay for destruction of prison property?  Hearings on these types of issues would be burdensome to the courts.  In enacting the PLRA, Congress aimed to decrease the burden that the number of claims filed by prisoners have placed on the federal courts." *Hampton*, 106 F.3d at 1286.  Thus, Congress could not have intended, when it enacted § 1915(b)(4), to require the federal courts to engage in satellite litigation regarding a prisoner's financial condition.

More importantly, if a prisoner were able to offer arguments that he could not pay the initial partial filing fee after the complaint had been filed, the prisoner could completely evade the initial partial filing fee requirement.  A prisoner could file a complaint, spend his assets to zero, and then claim that he does not have the assets or the means to pay the initial partial filing fee.  Again, the purpose of the PLRA was to make "all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." *In re Smith*, 114 F.3d 1247, 1249 (D.C. Cir. 1997) (quoting *Leonard v. Lacy*, 88 F.3d 181, 185 (2nd Cir. 1996)).  To allow a prisoner to argue that he no longer has the assets or the means to pay the initial filing fee after the complaint was filed would nullify the "bite" of the initial partial filing fee requirement, and thereby decrease the deterrent effect of the PLRA, in contravention of Congressional intent.

The Seventh Circuit addressed a closely-related issue under the PLRA in *Robbins v. Switzer*, 104 F.3d 895 (7th Cir. 1997).  Mr. Robbins filed an appeal, and he was subsequently released from prison.  He contended that he had no money to pay the appellate filing fee.  The Seventh Circuit stated that under § 1915(b)(4), if the prisoner's trust account balance is zero *"when he files his appeal"* then the case may proceed despite lack of payment. *Id.* at 897 (emphasis added).  The

-8-

Seventh Circuit refused to apply § 1915(b)(4) to Mr. Robbins, who had no money to pay the fee after he was released and his accounts were turned over to him:

> For all this record reveals, the accounts contained ample funds at the time he filed the appeals, but were paid over to him on his release and spent on other things. If that is so, then his appeal must be dismissed for noncompliance with § 1915(b)(1). His current poverty would not authorize continuation of the appeals, if he had the resources to comply with the statute at the time the Act called for payment.

> \* \* \* \*

> If these appeals are to continue, Robbins must pay the amount that according to the trust account statements he could have paid at the time he filed the appeal (and before his release). A dismissal for failure to pay that sum would not offend § 1915(b)(4); it would simply enforce the obligation created by § 1915(b)(1). The Act's effectiveness would be eroded if, during their final year of custody, prisoners could file suits and appeal without considering the financial consequences, planning to ignore the statute while in custody, divert trust account funds to other purposes, and plead poverty once released.

*Robbins*, 104 F.3d at 898-899. *Accord In re Smith*, 114 F.3d 1247, 1252 (D.C. Cir. 1997) (a prisoner "must demonstrate that he did not have money in his prison account to pay the PLRA fee at the time he filed his petition").

In light of the foregoing, § 1915(b)(4) only waives the payment of the initial partial filing fee when the prisoner has no assets and no means by which to pay the fee *at the time he files his complaint*. Because Plaintiff had the assets and the means to pay the fee at the time he filed his complaint, § 1915(b)(4) does not apply to waive the fee when Plaintiff subsequently claims that he is financially unable to pay the fee.

<u>Conclusion</u>

Plaintiff has been assessed an initial partial filing fee of $0.34. At the time Plaintiff

filed his complaint, his trust account statement indicated that he had the assets and the means to pay the initial partial filing fee of $0.34. Plaintiff may not subsequently re-open that assessment by arguing that he no longer is financially able to pay. Section § 1915(b)(4), which waives payment of the initial partial filing fee when a prisoner has no assets or means to pay the fee at the time the complaint is filed, does not apply to Plaintiff because he was able to pay the initial partial filing fee at the time he filed this complaint. Because Plaintiff has failed to pay the initial partial filing fee of $0.34 within 28 days as required by the court, the court will dismiss Plaintiff's action without prejudice for failure to prosecute.

Dated: 5/31/2016                              /s/ R. Allan Edgar
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE